MIGUEL MELÉNDEZ MUÑOZ, Petitioner and Appellee, *v.* BOARD OF EXAMINERS OF ACCOUNTANTS, Respondent and Appellant.

No. 4943. Argued January 17, 1930.—Decided June 10, 1931.

392

*James R. Beverley, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for appellant. *L. Muñoz Morales* and *M. Marcos Morales* for appellee.

Mr. Justice Aldrey delivered the opinion of the Court.

On May 13, 1927, there was approved Act No. 42 (Session Laws of 1927, p. 234) regulating the practice of public accounting in this Island and creating a board of examiners of accountants composed of three members, who are required to hold a certificate as certified public accountant granted in accordance with the laws of any State of the Union and to have practiced as such for a term of not less than five years. This board is authorized under the statute to issue a certificate of public accountant, known as "C. P. A.," to any person who submits to and passes the examination held by the board and prescribed by the act; and also to issue certificates, without examination, in such cases as are covered by section 8 of said act, which reads as follows:

"The board shall exempt from examination any person of good moral conduct, a citizen of Porto Rico in possession of his civil rights, who is over twenty-one years of age and who, prior to the approval of this Act, has practiced for at least five years as accountant, chief accountant or auditor with one or more firms or corporations of recognized importance, in the opinion of the board, or with the Insular Government or with a municipality of the first class, or who has practiced for not less than five years as public accountant or as teacher of advanced accounting, and who presents his application to the Board of Examiners of Accountants within the six months following the date on which this Act becomes effective, together with the fees prescribed by Section 5, as well as the documents necessary

to show that he is entitled to exemption from examination in accordance with the provisions of this Section.''

According to the above provisions, the board has power to issue a certificate without examination in any of the following cases: (a) To any person who has practiced for not less than five years as accountant, chief accountant, or auditor of any firm or firms or corporations of recognized importance, in the opinion of the board; (b) to any person who has practiced with the Insular Government or with a municipality of the first class; (c) to any person who has practiced not less than five years as public accountant or teacher of advanced accounting.

This act does not provide, as does the similar Act No. 31 of the same year regarding engineers, that unless evidence to the contrary exists, the board shall accept the sworn statement in the application as satisfactory evidence, but on the contrary it prescribes that the application for exemption shall be accompanied by such documents as are necessary to show that the applicant is entitled to the exemption sought.

Based on the provisions of said section 8 of the act, Miguel Meléndez Muñoz filed with the Board of Examiners of Accountants a sworn application for the issuance to him of a certificate of public accountant, without examination, and stated, in so far as now pertinent, that he had worked as an accountant in the Cayey branch of The P. R. Leaf Tobacco Co. from 1906 to 1908; for Modesto Munitiz, of Cayey from 1908 to 1911; as accountant-secretary of Cayey Light & Ice Co., in Cayey, from 1915 to 1919; as accountant for the firm of R. Ortiz & Co., in Cayey from 1911 to 1925; and as manager and chief accountant of the Cayey branch of the Crédito y Ahorro Ponceño, from 1919 to 1927. Together with his application, he filed an affidavit from Diego Capó, according to which Meléndez discharged the duties of the office of manager and chief accountant of the Cayey branch of the Crédito y Ahorro Ponceño, from November 1, 1919, until November, 1927.

The Board of Examiners denied the application for exemption for examination on the ground that it failed to comply with the requirements prescribed by section 8 of said act.

Thereupon Meléndez petitioned the board for a reconsideration of that ruling and stated that from 1899 to 1906 he had been employed by the firm of Modesto Munitiz, of Cayey, to establish a system of accounting for the said firm and had opened the account books consisting of a blotter, a journal, a ledger, a current-account book and a cash book, and other necessary auxiliary books, as well as inventory and balance books; that he kept these books personally until 1904, and from the latter date until 1906 as chief accountant he examined and supervised the accounts, with a volume of business of the said firm amounting to $350,000 during that time; that the firm dealt in groceries, dry goods, bills of exchange, and agricultural loans; that from 1904 to 1906, besides working for Munitiz, he was the manager of a public transportation company formed by Anacleto Agudo, Adrián Pérez, José Ramírez Muñoz, Francisco Fernández Nava y Santori; that he established a system of accounting appropriate to the business and kept the books personally; that from 1906 to 1908 he worked for the Cayey branch of the corporation, The P. R. Leaf Tobacco Co., his work consisting in recording the transactions carried out by said corporation in the district and keeping the account books of the corporation in which a record was kept of the agricultural loans and the administration expenses; that from 1908 to 1911 he established a system of accounting for the Cayey firm of R. Ortiz & Co., and opened its books, which firm did business annually amounting to $100,000; that from 1916 to 1919 he acted as secretary-accountant of the corporation, Cayey Light & Ice Co., domiciled in Cayey, and established the proper system of accounting for said corporation; that from 1919 to 1927 he worked for the Cayey branch of the bank, Crédito y Ahorro Ponceño, and had charge of the

management, inspection, and administration of all its business in Cayey and in the adjacent towns of Cidra and Aibonito and headed the accounting department, auditing the entries made in the books, rendering to the directors of the bank daily balances of the business transacted, and personally directing all the accounting; that from 1919 to 1927, besides serving the branch bank, he practiced his profession as public accountant and chief accountant and advertised as such, keeping an office independent of the bank; that he audited and directed the accounting of several business firms such as Aponte y Sobrino, of Cayey; he audited the accounts of R. Ortiz & Co., importers, and those of Aragunde & Co., with a volume of business above $100,000; also those of Peláez e Hijos, of Cayey; that he opened the books of the Cayey Industrial Corporation; and that he appeared before the District Court of Guayama to testify in several cases as an expert and chief accountant of the Crédito y Ahorro Ponceño in regard to entries in the books of the said bank. He also stated in his petition for reconsideration that he had pursued studies in accounting; that ever since 1899 he had continuously practiced his profession as accountant, bookkeeper, and chief accountant, with an office in Cayey, and had been engaged by several firms to report on their systems of accounting; and that he was ready to furnish any evidence that might be required by the board if the latter did not consider the evidence introduced as being sufficient. He exhibited with his petition for reconsideration affidavits signed by José D. Aponte, of Aponte & Sobrino; Pedro Quintana, of R. Ortiz & Co.; Angel Aragunde, of Aragunde & Co.; and Aureliano Peláez, of A. Peláez e Hijos, setting forth that the statements contained in the petition as to the practice had and work done by Meléndez as public accountant and chief accountant are true, that affiants have utilized his services as stated by him, and that they have always known him as a public accountant in Cayey.

The petition for reconsideration was denied by the board,

as it could not find any ground justifying a reversal of its previous ruling, which was based on the fact that the board did not consider as being of recognized importance from the standpoint of accounting, the firms in which, according to the petitioner's sworn statements, he has had experience as an accountant.

Thereupon Meléndez applied to the District Court of San Juan for a writ of mandamus to compel the said board to grant him a certificate without examination, and alleged that the board, without any justifiable cause and in disregard of its duties, refused to issue to him a certificate of public accountant; that, without summoning the petitioner and without hearing him, the board had refused to perform the ministerial duty imposed on it by the law to issue to him the certificate after it had been shown by means of affidavits that he has the legal qualifications; and that the decision of the board is capricious and arbitrary.

The court issued an alternative writ of mandamus which the board answered by opposing the same, and at the hearing there were introduced in evidence the two petitions above mentioned and the documents attached thereto, to which we have referred. There were also offered two certificates of which no mention has been made, because the lower court acknowledges that it admitted them improperly and for that reason did not consider them in reaching its decision. The oral evidence consisted of the testimony of Antonio R. Hernández, one of the members of the respondent board, who testified, in short, that before it began to pass upon the applications for exemption the board had adopted a resolution defining and construing what the board considered as a firm of recognized importance, and had accordingly declared that the word "importance," as used in the Act, means the importance of the firms or corporations from the standpoint of the system of accounting used, and not of their capital or financial status; that the capital of the Crédito y Ahorro Ponceño is about one and a half million dollars and the bank

is a depositary of the insular and municipal governments; that he had no information as to the Porto Rican Leaf Tobacco Co., which was engaged in the growing of tobacco and had, he thinks, sold its lands; that in its decision the board did not take into account the capital of the firms but their systems of accounting; that the board can gauge the sort of accounting used by each firm independently of its capital; that the system of accounting of the firms for which Meléndez had worked was a simple one; that the board was not acquainted with the system of accounting of those firms but that it knew more or less the sort of accounting from the nature of their business; that there are firms which have a complicated system of accounting, but that the firms for which Meléndez had worked were not of that kind because their bookkeeping was of the usual sort; that they did not look into the system of accounting of those firms; that the business done by the firm of Munitiz was the transportation of goods between Cayey and San Juan; that he has not examined the accounting of the Porto Rican Leaf Tobacco Co., but that its branches are guided by instructions issued from the principal office for keeping their books, and their work is mapped out; that, technically, in order to ascertain the system of accounting employed by a concern, it is not necessary to visit its office, as it may otherwise be known, more or less precisely; that the system of accounting of the Cayey branch of the Crédito y Ahorro Ponceño is different from that of the home office in Ponce, because in the branches certain books are not kept, and some accounting problems do not arise; that he did not know what systems of accounting are used by the firms of Munitiz & Co., Aponte & Sobrino, A. Peláez e Hijo, and R. Ortiz & Co., because neither he nor any other member of the board, to his knowledge, had looked into their systems; that the board does not recognize the branches as of importance because their accounting is marked out by the main office; and that they have granted licenses without examination to other persons.

After said hearing was held, the district court rendered judgment directing the issuance of a peremptory writ of mandamus, and from that judgment the board has taken the present appeal.

The grounds on which the lower court based its decision are as follows: That the law imposes on the board the ministerial duty to grant certificates without examination in the cases mentioned therein, and the fact that the board is authorized to determine the importance of the firms or corporations for which the applicant has worked does not render discretionary the act of exempting from examination and granting a certificate, which is a ministerial act; that the importance, from the standpoint of accounting, of the firms with which the petitioner had practiced had been shown; and that the defendant had admitted that the petitioner is an accountant and chief accountant with more than five years' practice.

The duty of the appellant board under section 8 of the applicable law is not ministerial, since the statute grants it the right to determine, in its judgment, whether the firms or corporations for which the applicant for a certificate without examination worked have an accredited importance. We so ruled in *Salgado* v. *Board of Exam. of Accountants,* 41 P.R.R. 735. It has been held that where an officer is called up to pass upon evidence and then decide, such action is judicial or quasi judicial and therefore discretionary. *Sweeney* v. *Young,* (1925) 131 A. 155; *Goldsmith* v. *Clabaugh,* 6 F. (2d) 94, 55 App. D. C. 346. The board has authority to decide whether the alleged experience has been as accountant, chief accountant, or auditor, and also as to the importance of the firms for which the applicant has worked. The law leaves to the discretion of the board created by it the determination of such technical question. Therefore, the duty of the appellant is discretionary and not merely ministerial.

To our mind, the petition for mandamus fails to allege that the board abused its discretionary power, as it rests on

the theory that by reason of the application and the documents exhibited therewith, the board was bound to issue the certificate applied for, but failed to do so, without summoning and hearing him, and in disregard of its unavoidable duty to issue the same. However, we will consider this aspect of the case, since the court has held that it had been shown that the appellee possesses all the required qualifications for the issuance to him of the license sought.

It was not the duty of the board to summon and hear the petitioner in order to pass upon his application, as the law requires that the person applying for a certificate without examination must present with his application the documents necessary to show his right to such exemption, and the board must base its decision on such application and documents; nor was the board bound to inform the applicant as to the proof required for reaching a decision. The appellee presented the documents which he deemed necessary and the board did not contradict his statement that he worked for the firms he says, but held that they are not of recognized importance as regards the accounting.

The testimony of the witness Hernández, the only addition to the affidavits which accompanied the application and the petition for reconsideration, does not overcome the finding made by the board that these documents did not show the accredited importance, as regards accounting, of the firms for which the appellee had worked, because this witness testified, in short, that the two branches in which the petitioner had worked are unimportant from the standpoint of accounting, since they are controlled by their respective principal offices and need not therefore solve problems of accounting; and that the other firms conducted a single business and did not require a complicated system of accounting, a simple system of bookkeeping being sufficient.

In his first application the appellee referred to services, which we have mentioned under subdivision (a), that is, as accountant, chief accountant, or auditor of firms having ac-

credited importance. But in his petition for reconsideration he seems to refer also to subdivision (c), that is, to his having worked as a public accountant for not less than five years.

In his petition for reconsideration the applicant fails to state that he has practiced as a public accountant—the language used by the statute—but apart from this, it appears from the context that he refers to the offices he filled in the said firms, for he states that since 1899 until the present time (1928) he has practiced as an accountant, bookkeeper, and chief accountant, which is the same practice that is required with firms of recognized importance under subdivision (a).

The lower court is mistaken in its conclusion that the board had admitted in its answer to the petition for mandamus that the petitioner is an accountant and chief accountant having practiced for more than five years, as such assertion was denied in the following words: "It denies . . . . that the petitioner has practiced as a public accountant for more than five years."

As we do not find that the appellant abused its discretion in denying the application of the appellee, we must reverse the judgment appealed from and render another instead denying the writ of mandamus applied for by the appellee, without special imposition of costs.